UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDENCIO CAMACHO,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | Case No. EDCV 04-1347-RC<br><br><br><br>OPINION AND ORDER |

　　　Plaintiff Fidencio Camacho filed a complaint on November 16, 2004, seeking review of the Commissioner's decision denying his application for disability benefits.  The Commissioner answered the complaint on April 12, 2005, and the parties filed a joint stipulation on June 28, 2005.

**BACKGROUND**

**I**

　　　On July 22, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since September 21, 2001, due to

fibromyalgia and sleep apnea.  Certified Administrative Record ("A.R.") 67-70, 87.  The plaintiff's application was denied on October 1, 2002, and was again denied on December 5, 2002, following reconsideration.  A.R. 48-56.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Mason D. Harrell, Jr. ("the ALJ") on March 25 and July 21, 2004.  A.R. 59, 241-81.  On August 20, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 7-19.  The plaintiff appealed this decision to the Appeals Council, which denied review on September 24, 2004.  A.R. 3-6.

**II**

The plaintiff, who was born on November 16, 1954, is currently 51 years old.  A.R. 67, 73.  He has a sixth-grade education and has previously worked as a machine operator.  A.R. 88, 93, 96-99.

The plaintiff has received mental health treatment at the San Bernardino County Department of Behavioral Health ("San Bernardino County") since January 29, 2002.  A.R. 168-90, 234-40.[1]  On February 7, 2002, Eugene Carlson, Ph.D., completed a "clinical assessment" of plaintiff, who complained of depression and anxiety.  A.R. 184-88.  Dr. Carlson found plaintiff was oriented to person, place, time and situation, but noted plaintiff "says he loses focus easily."  A.R. 187.  Further, Dr. Carlson found plaintiff's "dysfunction rating" was severe because plaintiff "says he can't work

---

[1] Plaintiff challenges only the ALJ's assessment of his mental condition.

2

with things as they are" and he "[h]as trouble keeping up parenting skills due to depression." A.R. 188. On April 19, 2002, Donna Barrozo, M.D., diagnosed plaintiff with a depressive disorder (not otherwise specified), determined plaintiff's Global Assessment of Functioning ("GAF") to be 50,[2] and prescribed antidepressants and other medication for plaintiff. A.R. 176-79, 181, 190. A diagnostic examination performed April 19, 2002, showed plaintiff had only a mild cognitive impairment. A.R. 177. On February 5, 2004, Dr. Barrozo opined plaintiff has: "marked" impairments in his ability to maintain attention and concentration for extended periods and respond appropriately to changes in the work setting; "moderate" limitations in his ability to remember locations and work-like procedures, carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of the normal hazards and take

---

[2] A GAF of 50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

3

appropriate precautions, and set realistic goals or make plans independently of others; a "slight" impairment in his ability to sustain an ordinary work routine without special supervision; and no impairment in his ability to understand and remember very short and simple instructions. A.R. 231-32.

Medical expert Michael E. Kania, Ph.D., a licensed clinical psychologist, testified at the administrative hearing that plaintiff has a depressive disorder secondary to a medical condition and a panic disorder. A.R. 259-63. Dr. Kania opined that plaintiff has "mild" limitations in daily living activities, "mild" difficulties maintaining social functioning, and no difficulties maintaining concentration, persistence, or pace, and has experienced no episodes of decompensation; thus, plaintiff has no mental limitations preventing him from working. A.R. 260-61. Further, Dr. Kania opined that no medical records support Dr. Barrozo's assessment of plaintiff's limitations. A.R. 262-63.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Burch v. Barnhart, 400 F.3d 676, 678 (9th Cir. 2005); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).

"In determining whether the Commissioner's findings are supported

4

by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant

has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the degree of functional loss resulting from the impairment must be rated by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must

incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)." 20 C.F.R. § 404.1520a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity during any relevant time period. (Step One). The ALJ then found plaintiff "has 'severe' medically determinable" physical impairments, including sleep apnea; however, plaintiff does not have a severe mental impairment.[3] (Step Two). Further, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work as a screw machine operator. (Step Four). Finally, the ALJ found plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). The Supreme Court has recognized

---

[3] Rather, the ALJ found plaintiff's depressive disorder (not otherwise specified) and an anxiety disorder "are considered mild and 'non-severe' because they have no more than a minimal impact on the [plaintiff's] ability to engage in work-related activities." A.R. 18. In assessing plaintiff's mental impairment, the ALJ determined plaintiff "is mildly impaired in his activities of daily living, social functioning, and concentration, persistence, or pace [but h]e has not had repeated episodes of decompensation in the workplace." A.R. 13.

that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Edlund, 253 F.3d at 1159; see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ *must* find that the impairment

is 'severe' and move to the next step in the SSA's five-step process." Edlund, 253 F.3d at 1160 (emphasis in original).

Here, plaintiff contends the ALJ erred in finding he does not have a severe mental impairment, by not considering the opinions of Dr. Barrozo, his treating psychiatrist, and Dr. Carlson, an examining psychologist.[4]

The ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Connett, 340 F.3d at 874.  Similarly, "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Bayliss, 427 F.3d at 1216.

Plaintiff's treating physician, Dr. Barrozo, initially examined plaintiff on April 19, 2002, and diagnosed him with depressive

---

[4] Since Dr. Carlson examined plaintiff on only one occasion, A.R. 184-88, he is an examining, rather than treating, psychologist. See Duyck v. Chater, 907 F. Supp. 338, 342 (D. Ore. 1995) (physician's "one-time examination of [plaintiff] does not qualify him as a 'treating physician'").

9

disorder (not otherwise specified).  Subsequently, on February 5, 2004, Dr. Barrozo opined plaintiff has various "marked" and "moderate" mental limitations.  However, the ALJ rejected Dr. Barrozo's opinions because there are no medical records to support the limitations found by Dr. Barrozo, and Dr. Barrozo's assessment is not supported by San Bernardino County treatment records.  A.R. 12, 15-16.  For instance, plaintiff's records show that, upon testing, he demonstrated only a "mild" cognitive impairment, A.R. 177, and his mental condition was stable and improved with medication.  A.R. 15-16, 236-40.  Thus, the ALJ offered specific and legitimate reasons for rejecting Dr. Barrozo's opinions.  Bayliss, 427 F.3d at 1216; see also Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physicians' opinions in part because they were in checklist form with no supporting objective evidence); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may properly reject check-off forms that do not contain explanations of bases for conclusions).

The plaintiff also complains the ALJ did not discuss Dr. Barrozo's determination of plaintiff's GAF in his decision.  However, the ALJ is not required to discuss a claimant's GAF in determining whether he is disabled, and the failure to do so, without more, does not invalidate the ALJ's decision.  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

Dr. Carlson examined plaintiff on February 7, 2002, documented plaintiff's complaints, and stated plaintiff's "dysfunction rating" was severe because plaintiff "says he can't work with things as they

10

1 are" and he "[h]as trouble keeping up parenting skills due to
2 depression[,]" and referred plaintiff for further treatment. Here,
3 plaintiff complains the ALJ's decision is not supported by substantial
4 evidence because the ALJ did not explicitly discuss this statement by
5 Dr. Carlson in determining plaintiff does not have a severe mental
6 impairment. "However, in interpreting the evidence and developing the
7 record, the ALJ does not need to 'discuss every piece of evidence.'"
8 Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations
9 omitted). Moreover, Dr. Carlson's statement merely documented
10 plaintiff's complaints, and referred plaintiff for further treatment
11 based on those complaints; it did not offer any diagnosis of
12 plaintiff. Therefore, the ALJ was not required to specifically
13 address Dr. Carlson's statement. Id. Finally, although the ALJ did
14 not specifically refer to Dr. Carlson by name, he thoroughly reviewed
15 the San Bernardino County medical records, including Dr. Carlson's
16 "clinical assessment," in determining that plaintiff is not disabled.
17 A.R. 15. Therefore, there was no error.

19     Lastly, Dr. Kania's opinions, offered at the administrative
20 hearing, constitute substantial evidence to support the ALJ's
21 determination in Step Two that plaintiff's mental impairment is not
22 severe. Specifically, Dr. Kania opined that plaintiff's limitations,
23 if any, are only "mild," and he has no limitations that prevent him
24 from working. See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d
25 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying
26 medical advisor may serve as substantial evidence when they are
27 supported by other evidence in the record and are consistent with
28 it."); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he

11

1  findings of a nontreating, nonexamining physician can amount to
2  substantial evidence, so long as other evidence in the record supports
3  those findings."), cert. denied, 519 U.S. 1113 (1997); 20 C.F.R. §
4  404.1520a(d)(1) ("If we rate the degree of your limitation in the
5  first three functional areas as 'none' or 'mild' and 'none' in the
6  fourth area, we will generally conclude that your impairment(s) is not
7  severe, unless the evidence otherwise indicates that there is more
8  than a minimal limitation in your ability to do basic work
9  activities.").

**V**

Plaintiff's friend, Elizabeth M. Ramirez, completed daily activity questionnaires stating plaintiff experiences fibromyalgia pain that is at times so severe, he needs help cleaning himself, he has difficulty bathing because of shoulder pain, and he has sleep apnea that sometimes awakens him at night. A.R. 106-11, 125-30. Ms. Ramirez also stated plaintiff shops every two weeks with assistance from his family, driving is difficult for him, he prepares microwave meals when necessary, he manages his finances, his chores are limited to light watering when he feels better, and he does chores until his pain becomes so severe that he needs to take pain medication and sleep. A.R. 107-08, 127-28. Ms. Ramirez further noted that plaintiff spends his time listening to the radio or watching television, and sometimes reads the newspaper or Penny Saver, but has difficulty concentrating or remembering because of his pain, and frequently cannot remember or follow a conversation. A.R. 108-10, 127-29. Ms. Ramirez opined plaintiff looks depressed and insecure, he avoids talking with anyone and seldom socializes because of his pain and

12

1  depression, and plaintiff's inability to do simple things has made him
2  distant and unhappy.  A.R. 128-30.  The plaintiff contends the ALJ
3  erred in rejecting this testimony.

5       "Lay testimony as to a claimant's symptoms is competent evidence
6  that an ALJ must take into account, unless he or she expressly
7  determines to disregard such testimony and gives reasons germane to
8  each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th
9  Cir. 2001); Bayliss, 427 F.3d at 1218.  Thus, third party daily
10 activity questionnaires are competent evidence, and "an important
11 source of information about a claimant's impairments[.]"  Regennitter,
12 166 F.3d at 1297; Schneider v. Comm'r of the Soc. Sec. Admin., 223
13 F.3d 968, 975 (9th Cir. 2000).

15      Here, the ALJ considered Ms. Ramirez's opinions, stating:

17      The statements in the record and testimony from Elizabeth
18      Ramirez, the [plaintiff's] friend and a lay witness, are
19      interesting but they are not medical evidence.  The
20      statements reflect that Ms. Ramirez's opinion is sincere and
21      serves to support the [plaintiff's] assertions.  However, it
22      is a statement which is not medically probative within the
23      regulations.

25 A.R. 17 (citations omitted).

27      The ALJ properly rejected Ms. Ramirez's opinions to the extent
28 they offered medical diagnoses of plaintiff's complaints.  See Nguyen

v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[M]edical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence"); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) ("[L]ay testimony . . . is not the equivalent of 'medically acceptable . . . diagnostic techniques' that are ordinarily relied upon to establish a disability."). Beyond that, the ALJ considered Ms. Ramirez's testimony, but found these statements did not establish that plaintiff's symptoms were disabling. A.R. 17. Therefore, the plaintiff's contention is without merit.

In any event, even if the ALJ erred in failing to consider Ms. Ramirez's statements, such error was harmless and does not warrant remand. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."); Vincent, 739 F.2d at 1395 (ALJ's failure to discuss lay testimony conflicting with medical evidence is harmless error). Here, plaintiff has pointed to nothing in Ms. Ramirez's statements that is inconsistent with the ALJ's assessment of plaintiff's condition. Moreover, as the ALJ noted, Ms. Ramirez's statements serve to corroborate plaintiff's testimony regarding his condition. A.R. 17. However, the ALJ considered plaintiff's testimony and found it was not credible to the extent it exceeded the ALJ's assessment of plaintiff's residual functional capacity, see A.R. 16-18, and plaintiff has not challenged the ALJ's negative assessment of his credibility. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[T]he ALJ's failure to give specific reasons for disregarding [lay witness'] testimony is inconsequential" when the ALJ properly rejected claimant's credibility, and "the same evidence supports discounting the [lay witness'] testimony. . . .");

14

Orcutt v. Barnhart, 2005 WL 2387702, *9-10 (C.D. Cal.) (Any error in failing to specifically discuss third-party questionnaire was harmless "when that testimony does little more than corroborate plaintiff's testimony and adds nothing of substance to the record. . . .").

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied and the defendant's request for relief is granted; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  December 7, 2005                /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
                                       UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-1347.MDO
12/7/05

15